UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY ANTILIA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>A. MANSDORFER, et al.,<br><br>　　　　Defendants. | Case No. 1:20-cv-00298-NONE-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED FOR FAILURE TO STATE A CLAIM<br><br>(ECF NO. 1)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE (21) DAYS |

　　　　Anthony Antilia ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed the complaint commencing this action on February 27, 2020.  (ECF No. 1).

　　　　The Court screened the complaint and found that it failed to state any cognizable claims.  (ECF No. 8).  The Court provided Plaintiff with applicable legal standards, explained why Plaintiff's complaint failed to state a claim, and gave Plaintiff leave to file a First Amended Complaint.  (Id.).  The Court also gave Plaintiff the option of standing on his complaint, subject to the Court issuing findings and recommendations to a district judge consistent with the screening order.  (Id. at 9).

　　　　On May 27, 2020, Plaintiff filed a notice, notifying the Court that he wants to stand on his complaint.  (ECF No. 9).  Accordingly, for the reasons set forth below, the Court recommends that this action be dismissed for failure to state a claim.

1

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file his objections.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 5), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

\\\

## II. SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff's complaint alleges as follows:

On or about August 26, 2019, while Plaintiff was at work at his CDCR mandated job assignment, Plaintiff was moving inventory around when he noticed a sharp pain in his right foot. This pain caused him to limp. He went to his supervisor (not a defendant) who noticed the limp. The supervisor made no comments, nor did he file an "incident report." Plaintiff finished the day in pain.

Plaintiff was made to work this way for several days. Then, with noticeable swelling, another officer personally walked Plaintiff to prison medical to get the foot examined.

Upon arrival, one of the nurses, Defendant Jane Doe, did a cursory examination and stated "you probably just sprained it." However, she also called Defendant Owolabi. Defendant Owolabi told nurse Defendant Jane Doe to x-ray the foot. The x-ray came back positive for a foot fracture.

Nevertheless, Defendant Owolabi never ordered a "medical lay-in," i.e., an excuse from work, or gave Plaintiff crutches. All that was given to Plaintiff was some type of oversized shoe that goes on the bottom of a walking cast. Plaintiff had to put it on himself and was still in pain.

Plaintiff was forced to work this way for 17 days. Each day when Plaintiff went to pick up medication for his back, he tried to get a "lay-in" and other attention. But other Jane Doe nurse defendants ignored his pleas for help.

Finally, on September 10, 2019, Plaintiff was taken by prison officials to an outside medical provider, i.e., a hospital. A "true" medical doctor ordered x-rays and discovered that the broken bone had grown larger in size due to mistreatment in the crack. Also, there was another fracture apparent in the original x-ray, which Defendant Owolabi had missed.

Once Plaintiff returned to prison, Plaintiff was provided with a medical lay-in, given crutches, and told to stay off the foot with no weight bearing at all.

Defendant U. Baniga was deliberately indifferent to his serious medical needs by not ordering staff at his prison to treat Plaintiff, or for that matter for not ordering proper medical

equipment for Plaintiff's foot in any way.

While all this was taking place, Plaintiff filed a "CDCR Medical 602." The Appeals Staff, A. Mansdorfer, interviewed Plaintiff. She did nothing except downplay Plaintiff's injury. She stated that she hated her job. Plaintiff asked about getting a cast or something more than the oversized soft shoe, but was denied.

Additionally, Ms. Thomas discontinued the medication Plaintiff was taking for his back disease, which is Ankylosing Spondylitis, without ever interviewing or consulting with Plaintiff. Defendant Owolabi did not intervene.

### III.  ANALYSIS OF PLAINTIFF'S CLAIMS

#### A.  Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or

omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

**B. Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted).

5

Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted).  Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).  Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.  To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances."  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff fails to state a claim for violation of his constitutional rights under these standards.  Plaintiff alleges that several defendants underestimated his injury, missed a separate fracture, and undertreated the fractures.  It was not until Plaintiff was sent to an outside specialist that his injury was sufficiently handled.

While Plaintiff has alleged facts demonstrating that he strongly disagreed with his care, and also that the medical providers at the prison failed to diagnose the extent of his fractures, this does not establish a violation of the Eighth Amendment under these legal standards.  Instead, Plaintiff's facts, if true, would at most establish negligence in treating his fracture.  Plaintiff's allegations show, at most, that the medical providers believed the injuries were not as serious as they were.  There is no indication that Defendants knew the extent of Plaintiff's injuries yet failed to treat them.  While these allegations may give rise to a claim for medical negligence (which Plaintiff does not assert and would be a claim under state law), they do not

give rise to a claim for deliberate indifference to serious medical needs.

Plaintiff's allegations also do not establish deliberate indifference to serious medical needs because they demonstrate Defendants taking action to diagnose and treat Plaintiff's injury, although not the action that Plaintiff believes were required.  Jane Doe Nurse asked for a second opinion from Dr. Owolabi, who ordered an x-ray.  Plaintiff was given a shoe support.  Plaintiff was eventually taken to an outside specialist.  Once that specialist diagnosed the true extent of Plaintiff's injuries, Plaintiff received all the care that he believes he needed  Although the delay in treatment may have been ill advised or negligent, the fact that Defendants provided care when confronted with the extent of his fracture further suggests that they were not acting with deliberate indifference to his serious medical needs.  Moreover, there are no allegations suggesting that the course of treatment chosen was medically unacceptable.

Plaintiff also alleges that Ms. Thomas discontinued Plaintiff's back medication.  Plaintiff's claim against Ms. Thomas does not appear to be related to the other claims in Plaintiff's case.  Moreover, his allegation does not state a claim.  There is no information about what medication she discontinued, why Plaintiff needed the medication, who originally prescribed it, and why his medication was taken away.  The Court cannot conclude based on these facts that Plaintiff had a serious medical need for the medication, or that Ms. Thomas acted with deliberate indifference in taking away that medication.

Finally, Plaintiff claims that Defendant U. Baniga is liable because he did not order staff to treat Plaintiff and did not provide proper medical equipment for Plaintiff's foot.  Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged.  Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or

7

promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

Plaintiff has not alleged that U. Baniga had any involvement in Plaintiff's medical care, let alone any allegations that would suggest that he was deliberately indifferent to Plaintiff's medical needs as described above. Moreover, Plaintiff has not alleged that improper medical equipment purchased by U. Baniga caused him to be denied care, or that U. Baniga was aware that any such equipment was faulty.

**IV.     CONCLUSION AND RECOMMENDATIONS**

The Court has screened Plaintiff's complaint and finds that it fails to state any cognizable claims. The Court provided Plaintiff with applicable legal standards, explained why Plaintiff's complaint failed to state a claim, and gave Plaintiff leave to file a First Amended Complaint, but Plaintiff chose to stand his complaint.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action be dismissed for failure to state a claim; and
2. The Clerk of Court be directed to close the case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v.

Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**May 28, 2020**__  /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE